**Concurring and Dissenting Opinion Filed October 5, 2020**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-20-00450-CV
No. 05-20-00451-CV

**IN THE INTEREST OF M.T., A CHILD**
**IN THE INTEREST OF S.R.L., A CHILD**

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. DF-12-19981-S and DF-17-19782-Z**

## CONCURRING AND DISSENTING OPINION

Before Justices Myers, Partida-Kipness, and Reichek
Concurring and Dissenting Opinion by Justice Partida-Kipness

Though I concur in affirming the trial court's judgment terminating Mother's parental rights, I disagree with the majority's determination that the evidence was factually sufficient to support termination under sections 161.001(b)(1)(D) and 161.001(b)(1)(E). Because I believe the majority misapplies this Court's precedent by affirming termination on those grounds, I respectfully dissent to those determinations. *See In re C.V.L.*, 591 S.W.3d 734, 751–52 (Tex. App.—Dallas 2019, pet. denied); *see also In re J.A.*, No. 05-19-01333-CV, 2020 WL 2029248, at *5 (Tex. App.—Dallas Apr. 28, 2020, pet. filed) (mem. op.).

Terminating a parent's rights to her children is a decision of constitutional proportion that strikes at the heart of human existence—the fundamental liberty interest of a parent in the care, custody, and control of her child. Termination is final and, when ordered based on a finding of endangerment, can have significant, future collateral consequences because the termination may be used as a basis to terminate the parent's rights to another child. *See* TEX. FAM. CODE § 161.001(b)(1)(M). The finality and gravity of these decisions is why due process requires the petitioner to justify termination by clear and convincing evidence, the termination finding must be supported by both legally and factually sufficient evidence, and an appellate court must review and detail its analysis as to termination of parental rights under sections 161.001(b)(1)(D) or (E) when challenged on appeal. *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019) (per curiam); *In re C.V.L.*, 591 S.W.3d at 748–49.

When reviewing the factual sufficiency of the evidence supporting a termination finding, an appellate court asks whether, in light of the entire record, the evidence is such that a fact-finder could reasonably form a firm conviction about the truth of CPS's allegations against the parent. *In re N.T.*, 474 S.W.3d 465, 475 (Tex. App.—Dallas 2015, no pet.); *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.). The appellate court must consider whether the disputed evidence is such that a reasonable fact-finder could not have reconciled that disputed evidence in favor of its finding. *In re C.V.L.*, 591 S.W.3d at 749. If the disputed evidence is so significant that a fact-finder could not reasonably have formed a firm belief or

conviction, then the evidence is factually insufficient. *Id.* "And in making this determination, the reviewing court must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)).

Although these standards of review are well established and routinely cited, in recent years this Court and our sister courts had become lax in the application of those standards. Specifically, rather than analyze the evidence under each standard, intermediate appellate courts would routinely cite the standards but then address them together and broadly conclude that the evidence was both legally and factually sufficient to support the endangerment findings. As a result, the intermediate appellate courts began combining legal and factual sufficiency review into a single standard. In *C.V.L.*, this Court reaffirmed the distinction between the two standards and the necessity for analyzing the evidence under each standard when reviewing termination rulings. *In re C.V.L.*, 591 S.W.3d at 750–52. And in doing so, *C.V.L.* showcased how applying the two standards to the evidence could mean the difference between affirmance and reversal.

In *C.V.L.*, we concluded that, although Father's positive drug tests constituted legally sufficient evidence to support a finding of endangerment under subsection (E), that evidence was factually insufficient to terminate Father's parental rights under subsections (D) or (E). *In re C.V.L.*, 591 S.W.3d at 751. Father presented evidence that he completed court-ordered treatment programs, had a support system

in place to care for the child, and maintained he never used drugs in the child's presence and did not engage in any conduct in her presence that would endanger her physical or emotional well-being. *Id.* at 746–47. The CPS caseworker confirmed that CPS sought termination despite Father's progress because of his past drug usage and the possibility the child would be put in danger if Father continued to use drugs. *Id.* CPS presented no evidence, however, that the child's conditions or surroundings had endangered her physical or emotional well-being in the past or that Father's past drug use remained a current or future threat to the child. *Id.* Without such evidence and considering the disputed evidence presented by Father, we concluded no reasonable fact-finder could form a firm belief or conviction that Father knowingly placed or knowingly allowed C.V.L. to remain in conditions or surroundings that endangered her physical or emotional well-being. *Id.* at 752. And, "[w]hile unquestionably an exercise of poor judgment, Father's use of methamphetamines on two occasions, standing alone, does not rise to the level of a conscious course of conduct" to support termination under subsection (E). *Id.* This Court and our sister courts have followed *C.V.L.* with similar results. *E.g.*, *In re J.A.*, 2020 WL 2029248, at *5–6 (three instances of marijuana use during pendency of case factually insufficient to support termination under section 161.001(b)(1)(E)); *In re M.P.*, No. 14-20-00169-CV, – S.W.3d –, 2020 WL 4876559, at *10, *12 (Tex. App.— Houston [14th Dist.] Aug. 20, 2020, no pet. h.) (affirming endangerment findings under legal-sufficiency standard but sustaining father's factual-sufficiency challenge

–4–

to endangerment findings under subsections (D) and (E)); *In re M.A.J.*, No. 01-19-00685-CV, – S.W.3d –, 2020 WL 3456130 (Tex. App.—Houston [1st Dist.] June 25, 2020, no pet. h.) (op. on reh'g) (evidence was legally sufficient but factually insufficient to support the trial court's finding that termination of mother's parental rights was in the best interest of the children); *see also Interest of L.C.L.*, 599 S.W.3d 79, 84–86 (Tex. App.—Houston [14th Dist.] 2020, pet. filed) (mother's drug use was legally insufficient to support endangerment findings where there was no evidence of any specific act that placed the children in danger because of the mother's use of drugs, no criminal charges related to mother's drug use, and no proof of threat of incarceration due to her alleged drug use).

In this case, rather than engage in a separate, detailed discussion of both standards, the majority engages in a combined sufficiency review and concludes jointly that the evidence is legally and factually sufficient to support the endangerment findings under subsections (D) and (E). By doing so, the majority reverted to this Court's pre-*C.V.L.* way of thinking and, as a result, failed to properly analyze the factual sufficiency of the evidence to support the jury's findings of endangerment. Conducting a separate factual sufficiency review, I would conclude the evidence was factually insufficient to support termination under subsections (D) and (E).

CPS argues Mother's "substance abuse," "criminal activities," "lack of visitation," and "husband" support the jury's endangerment findings. The evidence presented by CPS to support the endangerment findings consisted of the following:

- "Substance Abuse": Three positive drug tests, an admission by Mother that she used cocaine in May 2019 during the pendency of the case, and testimony that Mother used cocaine and smoked marijuana years before these proceedings.

- "Criminal Activities": Mother's arrests for four misdemeanor offenses, presented through Dallas County and Grayson County court records and Mother's brief testimony concerning the nature of the offenses.

- "Lack of Visitation": The CPS caseworker's conclusory and conflicting statements that Mother "attended about half. About 50 to 60 percent of the visits," testimony Mother missed all of the tele-therapy sessions with M.T., and testimony M.T. became emotionally distressed when Mother missed the visits.

- "The Husband": Written documentation that Mother's husband, R.L., had been a gang member and had a criminal record that included drug offenses and a conviction for aggravated assault with a deadly weapon. Testimony R.L. pushed Mother out of the way on one occasion, which caused Mother to fall and land on S.L. in her car seat. Testimony R.L.'s parental rights to S.L. have been terminated. Mother's testimony that she had previously hoped R.L. could see her daughters again in the future if the court allowed him to regain his parental rights.

This evidence, viewed singularly or in total, shows Mother used drugs at unknown times and intervals in the past and during the pendency of the case, has a non-violent criminal record for which she was on probation at the time of trial, missed some scheduled visitations that CPS did not validate through documentary evidence, married a man with a criminal record and a past gang affiliation, and was

pushed out of the way by R.L. during an argument on one occasion that caused Mother to fall on S.L. in her car seat but caused no injuries. Mother's past drug use and criminal record unquestionably illustrate an exercise of poor judgment. Mother's missed visitations, if viewed in a vacuum, could also illustrate poor judgment or a lack of commitment to her children. Her husband's criminal record and past gang affiliation, however, cannot be attributed to Mother. Instead, CPS used that information as an alleged example of Mother's poor judgment and to reinforce stereotypes and implicit biases many hold toward felons and gang members. CPS presented no evidence that R.L.'s arrests or incarceration endangered the children. The only "evidence" presented by CPS was the conclusory opinions of witnesses that children should not be around drug deals, drug dealers, gang members, or felons because those situations and people are dangerous.

But to establish a predicate finding of endangerment under subsections (D) or (E), CPS was required to show more than Mother's poor life choices, lapses in judgment, and her husband's criminal record. To satisfy the requirements of subsection (D), CPS was required to "present clear and convincing evidence of the child's actual physical surroundings or conditions that were created by the [allegedly] endangering conduct." *In re C.V.L.*, 591 S.W.3d at 751. As for subsection (E), which refers only to the parent's conduct, including her omissions or failures to act, CPS was required to show "a voluntary, deliberate, and conscious course of conduct by the parent." *In re K.S.*, No. 05-15-01294-CV, 2016 WL 1613126, at *14

(Tex. App.—Dallas Apr. 21, 2016, pet. denied) (mem. op.) (internal quotations omitted).

These standards of review ensure the State is held to its burden of proof. And there are fewer undertakings under the law where that task is as important as when CPS seeks to sever ties between a parent and her child forever. Under this record, I would conclude CPS did not meet its burden because CPS failed to present factually sufficient evidence of actual physical surroundings or conditions created by Mother's allegedly endangering the children, or a voluntary, deliberate, and conscious course of conduct by Mother that endangered the children's physical or emotional well-being.

Although the record shows past drug use and positive drug tests, the evidence also confirmed that Mother completed the Nexus in-patient drug treatment program as required by the trial court, and Mother presented evidence through her own testimony and that of other witnesses that she had never used drugs in the presence of the children, had been sober since May 2019, was actively participating in the Alcoholics Anonymous and Narcotics Anonymous programs, and was in consistent contact with her sponsor. CPS presented no evidence to controvert Mother's evidence or to show how Mother's past drug use endangered the children. Past drug use alone is factually insufficient to support a predicated finding of endangerment. *See In re C.V.L.*, 591 S.W.3d at 751–52.

Similarly, Mother's criminal record, standing alone, does not constitute engaging in conduct which endangers the emotional or physical well-being of a child. *In re E.S.S.,* 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.) (father's admission that he is serving life sentence, standing alone, cannot support a termination on endangerment grounds under subsection (E)). Moreover, there is no evidence in this record to support a finding that Mother's past arrests endangered the children's physical or emotional well-being at all. CPS presented no evidence the children witnessed Mother's arrests, knew of her arrests, ever came in contact with the weapons at issue with the weapons charges, or that Mother was a habitual offender likely to find herself in and out of jail, thus placing the children in a life of instability. Viewing this evidence under the lens of factual sufficiency review, I would conclude the evidence is factually insufficient to support termination under subsections (D) and (E). By finding this evidence factually sufficient to support the endangerment findings, the majority has allowed the termination of parental rights to become an additional punishment automatically imposed simply because a parent committed a crime. I believe that is contrary to Texas law and respectfully dissent to the reliance on these arrests to support termination here. *See In re E.S.S.*, 131 S.W.3d at 639.

As for Mother missing scheduled visitations, Mother admitted missing two out of fifteen visits, she denied missing the rest, and CPS presented no documentary proof of Mother's visitation record. The caseworker's conclusory and conflicting

statements that Mother "attended about half. About 50 to 60 percent of the visits" was the only support for the allegation of Mother's "lack of visitation." Conclusory statements are not evidence. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) ("[C]onclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence."). As such, this evidence is legally insufficient evidence to support an endangerment finding. *See In re L.C.L.*, 599 S.W.3d at 84–85 (caseworker's conclusory statements that a parent's drug use de facto endangers their children is insufficient to support termination under subsections (D) and (E)). But assuming the legal sufficiency of this evidence, I would conclude evidence that Mother missed visitations during the pendency of this case was factually insufficient to support termination. Although the evidence showed the missed visits caused M.T. emotional distress, the evidence did not show that Mother moved to West Virginia or missed the visits in an effort to knowingly endanger the children's physical or emotional well-being as required under subsection (D) or engaged in a voluntary, deliberate, and conscious course of conduct which endangered the physical or emotional well-being of the children as required for subsection (E). Mother moved to West Virginia to live near her mother to build a support network as she continued her path of sobriety and to obtain financial and emotional support that would help raise her daughters successfully. Those efforts to improve her living situation and maintain her sobriety, though in part responsible for the missed visitations, are relevant in determining whether

Mother's conduct resulted in "endangerment" of the child. *See In re D.T.*, 34 S.W.3d 625, 640 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g). Viewing the record as a whole, CPS did not establish by clear and convincing evidence that Mother pursued a course of conduct that endangered the physical or emotional well-being of the children such that terminating her parental rights was justified. *See Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 578 (Tex. App.—Corpus Christi–Edinburg 1993, no writ) (mother's failure to comply with DHS directions and goals provided factually insufficient evidence to support termination).

Finally, R.L.'s criminal record and past gang affiliation do not support the endangerment findings here. Being actively involved in or affiliated with a gang or the criminal activities of a gang may support a finding of endangerment to support termination of the parental rights of the alleged gang member or of his spouse or partner if she allows the children to be in the presence of gang-related activities or knows the gang member is actively involved with the gang and its criminal endeavors. *E.g.*, *In re A.M.*, No. 13-12-00767-CV, 2013 WL 1932903, at *24 (Tex. App.—Corpus Christi–Edinburg May 9, 2013, no pet.) (mem. op.) (endangerment findings against mother supported by evidence that father's gang affiliation was a danger to the children, mother was raped by members of the gang but allowed a member who assisted in the rape to be around the children, and mother allowed father to interact with the children despite physical abuse, domestic violence, and knowledge that father was engaged in gang-related criminal activity); *Rodriguez v.*

*Blessed Trinity Adoptions, Inc*., No. 01-96-01021-CV, 1998 WL 149548, at \*4 (Tex. App.—Houston [1st Dist.] Apr. 2, 1998, no pet.) (not designated for publication) (testimony of expert regarding gang-related violence in the context of Father's admitted gang affiliation, compels a conclusion that were the baby to reside with Father or his family, her physical and emotional well-being would be endangered and, therefore, supported termination). Here, CPS presented no evidence R.L. was engaged in gang-related or gang-affiliated activities during his marriage to Mother, that gang members or rival gangs were ever in contact with Mother or the children, or that his past affiliation endangered Mother or the children at any time. CPS simply presented a 2016 incident report in which the officer stated that R.L. "has an active file in GANGNET" and admitted to being a member of a gang called Crip 42 Oakland. Just as incarceration or conviction, standing alone, is legally and factually insufficient to support termination of the offending parent's parental rights, I would conclude the mere reference to a gang affiliation, without more, is at least factually insufficient to support a finding of endangerment against Mother here.

This is not a question of whether termination is in the children's best interests or even if the evidence was factually sufficient to support the jury's best interest determination. Before we may even address best interest, CPS must establish a predicate finding under section 161.001; here, endangerment under subsections (D) or (E). The evidence CPS presented in this case does not, in my view, pass factual-sufficiency review as to a predicate finding of endangerment and, therefore, I

–12–

respectfully dissent to the majority's opinion affirming termination based on findings of endangerment under subsections (D) and (E).

The evidence was, however, legally and factually sufficient to support termination of Mother's parental rights based on her discharge from the Legacy Court program. The jury unanimously found by clear and convincing evidence that Mother

> failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Texas Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

*See* TEX. FAM. CODE § 161.001(b)(1)(O). On appeal, Mother challenges only the legal and factual sufficiency of the evidence to support that the children were removed based on abuse or neglect. This is a non-starter, however, because CPS removed the children in February 2018 based on allegations of abuse or neglect of the children under Chapter 262.

Further, to prove a statutory predicate for termination under section 161.001(b)(1)(O), CPS had to prove that Mother failed to comply with a court order that specified what she had to do to get the children back. *In re C.W.*, 586 S.W.3d 405, 406 (Tex. 2019) (citing TEX. FAM. CODE § 161.001(b)(1)(O)); *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013); *In re S.N.*, 287 S.W.3d 183, 187–88 (Tex. App.— Houston [14th Dist.] 2009, no pet.). Even substantial compliance with a family service plan is insufficient to avoid a termination finding under subsection (O). *In re*

*C.M.C.*, 273 S.W.3d 862, 875 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Moreover, the Family Code does not allow consideration of excuses for failure to comply in assessing a statutory violation. *In re M.C.G.*, 329 S.W.3d 674, 675–76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (any excuse for failing to complete a family services plan goes only to the best interest determination, which appellant did not challenge on appeal); *see also Wilson v. State*, 116 S.W.3d 923, 929 (Tex. App.—Dallas 2003, no pet.) (mother's excuses for failure to comply court order establishing the actions necessary for her to obtain the return of her child, did not create a factual dispute as to her compliance and evidence was factually sufficient to support endangerment finding under subsection (O)).

Here, the trial court's orders set out the actions necessary for Mother to obtain the return of her children. One of those required actions was completion of the Legacy Court program. The evidence was undisputed that Mother did not appear for certain required Legacy Court hearings, failed to complete the Legacy Court program, and was discharged from the program by court order. The evidence was also undisputed that Mother failed to comply with the program's Call2Check drug and alcohol testing requirements. This record evidence demonstrates that Mother did not comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children and, thus, provides a basis for termination of parental rights under subsection (O). *See In re C.M.C* ., 273 S.W.3d at 875.

Reviewing all the evidence in the light most favorable to the termination findings, I would conclude that a reasonable fact-finder could have formed a firm belief or conviction as to the truth of the termination findings under section 161.001(b)(1)(O). And in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the termination finding under section 161.001(b)(1)(O) is not so significant that a fact finder could not reasonably have formed a firm belief or conviction as to the truth of the termination finding under section 161.001(b)(1)(O). In other words, I would conclude the evidence was legally and factually sufficient to support termination under section 161.001(b)(1)(O) and would affirm the judgment on that ground alone.

Because I agree the judgment may be affirmed on this basis, I concur in the judgment.


/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE


200450CF.P05

–15–